IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **Jennifer Trego,** : | |
| : | |
| **Plaintiff,** : | |
| : | Case No. 2:07-CV-1308 |
| **v.** : | |
| : | JUDGE ALGENON L. MARBLEY |
| **Germain Ford of Columbus, et al.** : | |
| : | Magistrate Judge Abel |
| **Defendant.** : | |
| : | |

## OPINION AND ORDER

### I. INTRODUCTION

This matter is before the Court on Defendant Telhio Credit Union, Inc.'s ("Telhio") Motion to Dismiss for Lack of Subject Matter Jurisdiction or, alternatively, for Partial Summary Judgment. For the reasons set forth below, this Court **GRANTS** Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction. Because Plaintiff Jennifer Trego's ("Ms. Trego") state law claims have been dismissed, this **MOOTS** Defendant's Motion for Partial Summary Judgment.

### II. BACKGROUND

On May 31, 2004, Ms. Trego visited Germain Ford of Columbus ("Germain") to purchase an automobile. She decided to trade in her 2001 Volkswagen Jetta (the "Jetta") for a 2002 Ford Explorer (the "Explorer"). To obtain financing for her purchase, she filled out a loan application and a promissory note for Telhio Credit Union, Inc. ("Telhio"), which handles the financing for Germain. Germain informed Ms. Trego that her financing was approved. Ms.

Trego relinquished her Jetta to Germain, and Germain gave her the Explorer to drive home. Ms. Trego received a telephone message from Germain on June 8, 2004, indicating that she needed to return to the dealership. Ms. Trego returned to Germain on the following day and was informed by Germain that her financing did not go through and that she would have to agree to higher monthly payments and a $1000 to $2000 down payment to retain the Explorer. Ms. Trego refused the financing deal. On June 14, 2004, Germain offered her another financing deal which she also refused. She gave Germain the keys to the Explorer and left it at the dealership.

Telhio received Ms. Trego's loan application on June 1, 2004 and initially denied it for insufficient income. After receiving additional income information from Germain, Telhio approved Ms. Trego's loan on June 16, 2004, under its original terms, and subsequently disbursed $27,464.65 to Germain on Ms. Trego's behalf. Germain called Ms. Trego some time between June 14, 2004 and June 19, 2004 and told her that Telhio approved her loan, she now owned the Explorer, and she should pick up the Explorer from Germain. Ms. Trego never went to Germain to pick up the vehicle. It was later repossessed at Germain.

On June 19, 2004, Ms. Trego called Telhio to ask about the loan Telhio had recently approved for her. The Telhio employee she spoke to, Diane, informed Mr. Trego that she did not currently have an open account with Telhio. At that time, Telhio did not have an account for Ms. Trego in its computer system. On June 23, 2004, Telhio received the promissory note that Ms. Trego had signed at Germain on May 31, 2004. Telhio created an account for Ms. Trego in their computer system the next day on June 24, 2004.

Telhio received a credit report for Ms. Trego on October 20, 2007. It asserts it pulled the report as a result of a credit dispute that Ms. Trego had regarding how something was being reported. There has been no evidence presented as to what the credit dispute was concerning or

to whom Ms. Trego made the credit dispute to. Ms. Trego alleges that it was for a purpose not authorized by the Fair Credit Reporting Act.

Ms. Trego filed suit against Germain, James Vicchiarelli, Lester P. Cook, and Telhio in state court in 2004. That suit was dismissed without prejudice on the eve of trial in 2007. Ms. Trego subsequently re-filed suit in this Court against all the defendants on December 31, 2007. Her claims again Telhio were for: a violation of the Federal Fair Credit Reporting Act, a violation of Ohio's Consumer Sales Practices Act1, a violation of Ohio's Retail Installment Sales Act, fraud and deceit, and secondary and derivative liability pursuant to Ohio Revised Code § 1317.031. All defendants but Telhio have settled. Telhio moves for dismissal of the state law claims for lack of subject matter jurisdiction or, alternatively, seeks summary judgment on the state law claims.

### III. STANDARD OF REVIEW

#### A. Motion to Dismiss

Telhio has filed a Federal Rule of Civil Procedure 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. Telhio asserts this Court does not have jurisdiction over Ms. Trego's state law claims. Federal courts are courts of limited subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Federal courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. This type of jurisdiction is commonly referred to as federal question jurisdiction. This case is before this Court under its federal question jurisdiction because Ms. Trego asserts a violation of the Federal Fair Credit Reporting Act.

---

1 Ms. Trego has since abandoned her Ohio Consumer Sales Practices Act claim. As such, it will not be discussed further.

To exercise jurisdiction over Ms. Trego's state law claims, however, the Court must rely on supplemental jurisdiction. Pursuant to 28 U.S.C.A. § 1367(a):

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

The party that invokes federal jurisdiction has the burden of establishing its existence. *Moir v. Greater Cleveland Reg'l Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may attack the complaint on its face or may go beyond the complaint and challenge the factual existence of subject matter jurisdiction. *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005). The resolution of a factual attack does not depend on the sufficiency of the pleading's allegations as the "the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *United States v. Ritchie*, 15 F. 3d 592, 598 (6th Cir. 1994). "On such a motion, no presumptive truthfulness applies to the . . . allegations." *Id.*

### B. Summary Judgment

Summary judgment is proper if "there is no genuine issue as to any material fact [such that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). But "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the court must construe the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The movant therefore has the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart*

*v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993). But the non-moving party "may not rely merely on allegations or denials in its own pleading." Fed. R. Civ. P.56(e)(2); *see Celotex*, 477 U.S. at 324; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). The non-moving party must present "significant probative evidence" to show that there is more than "some metaphysical doubt as to the material facts." *Moore v. Philip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

## IV. LAW AND ANALYSIS

Ms. Trego has four remaining claims against Telhio. She asserts one federal law claim, a violation of the Fair Credit Reporting Act ("FCRA"), and three Ohio state law claims: a violation of Ohio's Retail Installment Sales Act, fraud and deceit, and secondary and derivative liability for all claims made against Germain.[2] The Sixth Circuit has established the test for supplemental jurisdiction over state law claims: (1) the federal claim must have substance sufficient to confer subject matter jurisdiction on the court; (2) the state and federal claims must derive from a common nucleus of operative fact; and (3) the plaintiff's claims must be such that she would ordinarily be expected to try them all in one judicial proceeding. *Transcontinental Leasing, Inc. v. Michigan Nat'l. Bank,* 738 F.2d 163, 165-66 (6th Cir. 1984). Supplemental jurisdiction is also a doctrine of discretion whose justification lies in "considerations of judicial economy, convenience and fairness to litigations." *Id.* at 166 (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). Accordingly, a district court with supplemental jurisdiction

---

[2] The Court considers this claim to be based entirely in state law although Ms. Trego lists both federal regulation 16 C.F.R. § 433.2(a) and Ohio Revised Code § 1317.031 as bases for such liability. This is because 16 C.F.R. § 433.2(a) does not confer a private right of action. *Morales v. Walker Motor Sales, Inc.*, 162 F. Supp. 2d 786, 790 (S.D. Ohio 2000); see Ohio ex. Rel. Dann v. Citibank, No. 2:07 CV 1149, 2008 WL 1990363, at *5 n.3 (S.D. Ohio May 1, 2008) (finding 16 C.F.R. § 433.2(a) "fails to establish federal question jurisdiction").

should normally dismiss state claims without prejudice when "it appears that the state issues substantially predominate, . . ." *Id.* (quoting *Gibbs*, 383 U.S. at 726).

## A. Federal Claim Substance

First, the federal FCRA claim must have substance sufficient to confer subject matter jurisdiction on this Court. As explained by the Supreme Court in *Hagans v. Lavine*, 415 U.S. 528 (1974), a claim is insubstantial if it is "'obviously without merit' or because 'its unsoundness so clearly results from the previous decisions of [the Supreme Court] as to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy.'" *Id.* at 537. "The substantiality of a federal claim is measured by the pleadings…", *Transcontinental Leasing*, 738 F.2d at 166 (citing *Gibbs*, 383 U.S. at 727), and Ms. Trego's complaint satisfactorily states a claim based on the FCRA. Therefore, Ms. Trego has satisfied the first prong of the supplemental jurisdiction test.

## B. Common Nucleus of Operative Fact

Second, the state and federal claims must derive from a common nucleus of operative fact. Ms. Trego's state law claims derive from the incidents in 2004 leading up to and directly following her purchase of the Explorer. Conversely, Ms. Trego's FCRA claim is based entirely on an event that occurred in 2007, retrieving Ms. Trego's credit report. There are no operative facts relevant to her FCRA claim that are relevant to her state law claims. *Cf. Province v. Cleveland Press Pub. Co.,* 787 F.2d 1047, 1055 (6th Cir. 1986) (finding supplemental jurisdiction proper when there was "substantial similarity between the predicate factual findings necessary to the resolution of both the federal and state law claims"). Moreover, while the operative facts relevant to her state law claims may be causally relevant to her FCRA claim— because Telhio would not have her personal information with which to obtain a credit report but

for the events in 2004—they are hardly relevant to proving the elements of an FCRA claim. If a state claim has no bearing on the federal claim, that counsels against exercising supplemental jurisdiction. *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006).

The case sub judice is analogous to both *Salei v. Boardwalk Regency Corp.*, 913 F. Supp. 993 (E.D. Mich. 1996) and *Habich v. City of Dearborn*, 331 F.3d 524 (6th Cir. 2003). In *Salei*, the plaintiff brought three claims against the defendant: a state law claim for breach of a settlement agreement, a state law claim for violation of a court order, and a federal law claim for violation of the FCRA. 913 F. Supp. at 995. The defendant had the claims removed to federal court, and the plaintiff sought to have them remanded back to state court. *Id.* The court found the claims were causally related because, as in the case sub judice, but for the interactions that predicated the state law claims, the defendant never would have received a credit report on the plaintiff. *Id.* at 999. Nevertheless, this was not sufficient to create a common nucleus of operative fact because, as the court noted, "the facts that are relevant to the resolution of Plaintiff's FCRA claim are completely separate and distinct from the facts that bear upon Plaintiff's state claims." *Id.* The court found that "[t]he success of Plaintiff's FCRA claim depends not at all on" the resolution of the state law claims. The court concluded that irrespective of the success of the state claims, "Plaintiff will prevail on his federal claim only if he can prove his allegations that Defendant obtained a credit report for an impermissible purpose." *Id.* The court therefore granted the plaintiff's motion to remand his state law claims because it lacked jurisdiction over them. *Id.* at 995, 1000. This reasoning applies with equal force for Ms. Trego's claims.

In *Habich*, the plaintiff brought two federal law claims and one state law claim against Dearborn, all involving a house that she owned in Dearborn. 331 F.3d at 527. Her federal equal protection claim was based on her allegation that the city refused to sell her a plot of land similar

to one it sold to a neighbor. *Id.* Her federal due process claim was based on the city padlocking her house without a hearing. *Id.* And her state law claim appealed an administrative decision which held that a landlord-tenant relationship had been created at the house and as such the city was entitled to inspect the premises. *Id.* at 528. The district court declined to extend supplemental jurisdiction over the administrative decision, and the Sixth Circuit upheld that decision, stating:

> Habich's petition for review of the [Building Board of Appeals] decision did not necessarily involve any of the "operative fact[s]" at issue in the federal suit. The federal suit involved the failure to hold a hearing and the refusal to sell some land; the state proceeding involved the nature of an owner-occupant relationship. The suits involved the same agency and same piece of property, but it was not an abuse of discretion to refuse to review the state administrative proceeding under 28 U.S.C. § 1367.

*Id.* at 535 (citations omitted). Similarly, in the case sub judice, there are state and federal claims that involve the same parties, but the resolution of the state and federal claims is dependent upon entirely different operative facts.

Therefore, Ms. Trego has not satisfied the second prong of the supplemental jurisdiction test because her state and federal claims do not derive from a common nucleus of operative fact.

## C. Expect to Try in One Proceeding

Finally, the plaintiff's claims must be such that she would ordinarily be expected to try them all in one judicial proceeding, Though these claims are all brought by Trego against Telhio, this fact alone is insufficient to establish that these claims should be tried together. *See*, *e.g. Habich*, 331 F.3d at 535; *Salei*, 913 F. Supp. at 998; *Firestone Tire & Rubber Co. v. Bodle*, 645 F. Supp. 305, 310-11 (N.D. Ohio 1986). The circumstances surrounding Ms. Trego's state and federal claims indicate they would not ordinarily be expected to be tried in one judicial proceeding.

The events that form the basis of her state claims happened three years before those that form the basis of her federal claim. The factual inquiries required to resolve each claim are distinct. The key question surrounding Ms. Trego's FCRA claim will be whether Telhio obtained a credit report for an impermissible purpose. *See Salei*, 913 F. Supp. at 999. To determine her state law claims, however, there must be an inquiry into the sale and financing of the Explorer. The state claims "can be resolved without any consideration whatsoever of a possible FCRA violation." *Id.* Because of this, it is unlikely that there will be overlap between the witnesses and evidence used to prove the state and federal claims. Furthermore, Ms. Trego has alleged no connection between the events of 2004 and the credit check of 2007. For these reasons, Ms. Trego's claims are not of the sort one would ordinarily be expected to try in one judicial proceeding.

Because the state law claims and federal claim do not arise from a common nucleus of operative fact, and because these claims would not ordinarily be expected to be tried in one judicial proceeding, this Court cannot exercise supplemental jurisdiction over Ms. Trego's state law claims.

### D. State Claims Substantially Predominate

Moreover, this Court declines to exercise jurisdiction over Ms. Trego's state law claims because they substantially predominate over her lone federal claim. Supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right", *Gibbs*, 383 U.S. at 726, and Congress has specifically allowed for district courts to decline to exercise supplemental jurisdiction over a state law claim if "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction…." 28 U.S.C. § 1367(c)(2). Although no definitive test has been enunciated for whether state law claims predominate over federal law claims, "courts have considered such factors as whether they outnumber the federal law claims; whether the claims are distinct; and whether [the] state law claims involve proof that is not needed to establish the federal law claims." *Williamson v. Recovery Ltd. P'ship*, No. C2-06-292, 2009 WL 649841, at *9 (S.D. Ohio March 11, 2009).

Several factors indicate that Ms. Trego's state law claims predominate over her sole federal law claim. First, her state law claims outnumber her federal law claim three-to-one. Second, the facts relevant to the resolution of her lone federal law claim are not relevant in any way to the resolution of her state law claims. Third, the facts relevant to the resolution of her state law claims are only tangentially related to her federal law claim. Finally, her state law would substantially expand the scope of a trial beyond what would be required to prove her federal law claim.

The Court finds, therefore, that Ms. Trego's state law claims substantially predominate over her federal law claim. *See, e.g. Gibbs*, 383 U.S. at 726-27 ("[I]f it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without

prejudice and left for resolution to state tribunals."); *Szendrey-Ramos v. First BanCorp*, 512 F. Supp. 2d 81, 86 (D. P.R. 2007) (holding that claims based in Puerto Rican law predominated over federal claims because they were more numerous and required proof of different facts); *Bostic v. AT&T of Virgin Islands*, 166 F. Supp. 2d 350, 364 (D. V.I. 2001) ("At a trial on the merits, the vast majority of evidence in this case would pertain solely to the [non-federal] claims."); *James v. Sun Glass Hut of Cal., Inc.* 799 F. Supp. 1083, 1085 (D. Colo. 1992) (finding state law predomination where the state law claims were more numerous and required different proofs than the federal claim, and would "substantially expand the scope of this case").

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction is **GRANTED**. Plaintiff's state law claims are **DISMISSED** without prejudice. Because this Court has dismissed Plaintiff's state law claims, Defendant's Motion for Partial Summary Judgment is **MOOTED**.

**IT IS SO ORDERED.**

<u>s/Algenon L. Marbley</u>
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT COURT**

**Dated: September 8, 2009**